IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Ultimate Hearing Solutions II, LLC; Ultimate Hearing Solutions III, LLC; Ultimate Hearing Solutions IV, LLC; Ultimate Hearing Solutions V, LLS: and Ultimate Hearing Solutions VI, LLC, <br><br> Plaintiffs, <br> vs. <br><br> Twin City Fire Insurance Company <br><br> Defendant. | Case No.: 2:20-cv-02401 <br><br><br><br><br><br><br><br><br><br><br> **AMENDED COMPLAINT** |

Plaintiffs Ultimate Hearing Solutions II, LLC; Ultimate Hearing Solutions III, LLC; Ultimate Hearing Solutions IV, LLC; Ultimate Hearing Solutions V, LLS: and Ultimate Hearing Solutions VI, LLC, ("UHS or Plaintiffs"), by way of Complaint against Defendants Twin City Fire Insurance Company ( "Twin City" or "Defendant"), allege as follows:

### INTRODUCTION/BACKGROUND

1. On March 11, 2020 World Health Organization Director General Tedros Adhanom Ghebreyesus declared the COVID-19 outbreak a worldwide pandemic: "WHO has been assessing this Outbreak around the clock and we are deeply concerned both by the alarming levels of spread and severity, and by the alarming levels of inaction. We have therefore made the assessment that COVID-19 can be characterized as a pandemic."[1]

---

[1] See https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-COVID-19 11-march-2020

2428505.1
2464260.1

2. On March 16, 2020, the Centers for Disease Control and Prevention, and members of the National Coronavirus Task Force issued to the American public guidance, styled as "30 Days to Slow the Spread" for stopping the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures, such as working from home, avoiding shopping trips and gatherings of more than 10 people, and staying away from bars, restaurants, and food courts.[2]

3. Following this advice for individuals to adopt far-reaching social distancing measures, many state government administrations across the nation recognized the need to take steps to protect the health and safety of their residents from the human to human and surface to human spread of COVID-19. As a result, many governmental entities entered civil authority orders suspending or severely curtailing business operations of non-essential businesses that interact with the public and provide gathering places for the individuals. Currently, almost all states within the United States have issued some sort of "stay-at-home" order and ordered private non-essential business operations to close.

4. The result of these far-reaching restrictions and prohibitions has been catastrophic for most non-essential businesses, especially retail establishments, and other small, medium, and large businesses who have been forced to close, furlough employees, and endure a sudden shutdown of cash flow that threatens their survival.

5. Most businesses insure against such catastrophic events like the current unforeseen COVID-19 pandemic through all-risk commercial property insurance policies. These policies promise to indemnify the policyholder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, when access to the premises is

---

[2] See https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf

2428505.1
2464260.1

prohibited because of direct physical loss or damage to the property, or by a civil authority order that restricts or prohibits access to the property. This coverage is commonly known as "business interruption coverage" and is standard in most all-risk commercial property insurance policies.

6. Defendant who has issued commercial property insurance policies with business interruption coverage, are denying the obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population.

7. This action brings a claim against Defendant for its breach of its contractual obligation under its respective commercial property insurance policies to indemnify Plaintiffs for business losses and extra expenses, and related losses resulting from actions taken by civil authorities to stop the human to human and surface to human spread of the COVID-19 outbreak.

## THE PARTIES

8. Plaintiffs Ultimate Hearing Solutions II, LLC; Ultimate Hearing Solutions III, LLC; Ultimate Hearing Solutions IV, LLC; Ultimate Hearing Solutions V, LLS: Ultimate Hearing Solutions VI, LLC, ("UHS") are limited liability companies which operate hearing aid stores. Plaintiffs UHS are citizens of Pennsylvania, whose principal place of business is 471 Baltimore Pike, Springfield Pennsylvania 19064 are limited liability companies which operate hearing aid stores and provides hearing tests, hearing aids, and after-care for existing patients. Plaintiffs UHS also operate stores in other locations in Pennsylvania, including Glen Mills, and Media and in Dover and Lewes Delaware. As well as the following in Maryland: Salisbury, Ocean City, Forest Hill, Owings Mills, Towson, Annapolis, Nottingham, Cumberland and Hagerstown and one office in Winchester, Virginia.

2428505.1
2464260.1

9. This Defendant Twin City is a citizen of Indiana being organized under the laws of the State of Indiana and with its headquarters and principal place of business at 501 Pennsylvania Parkway, Indianapolis, Indiana, 46280.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states: Plaintiffs and the members of each their LLCs are citizens of Pennsylvania and Defendant is citizen of Indiana.

11. This Court has personal jurisdiction over Defendant, as Defendant is registered to conduct business in this Commonwealth, regularly conducts business in Pennsylvania, and has sufficient contacts in Pennsylvania. Defendant intentionally avails itself of this jurisdiction by conducting operations here and promoting, selling, and marketing Defendant's policies of insurance to resident Pennsylvania consumers and entities.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District and because a substantial part of the Plaintiffs' insured properties that are the subject of the action are situated in this District. Moreover, Defendant does business in this District and thus resides in this District, in accordance with 28 U.S.C. § 1391(c).

## FACTUAL ALLEGATIONS

A. **The Twin City Policy**

1. In return for the payment of a premium, Twin City issued Policy No. 39 SBA AA3300 to Plaintiffs UHS (hereinafter, the "Twin City Policy"). Policy No. 39 SBA AA3300 is attached hereto as **Exhibit A.**

2. The Covered Properties and Scheduled Premises under the Twin City Policy include the following:

   i. 600 Town Centre Dr, Glen Mills PA 19342.

   ii. 18462 Plantations Blvd, Lewes DE 19958.

   iii. 8837 Belair Rd, Nottingham MD 21236.

   iv. 701 E Naylor Mill Rd, Salisbury MD 21804.

   v. 1521 Rock Spring Rd, Forest Hill MD 21050.

   vi. 9351 Lakeside Blvd, Owings Mill MD 21117.

   vii. 1220A E Joppa Rd, Towson MD 21286.

   viii. 509 S Cherry Grove Ave, Annapolis MD 21401.

   ix. 1163 West Baltimore Pike, Media PA 19063.

   x. 11724 Ocean Gateway Unit 4, Ocean City MD 21842.

   xi. 137 Jerome Drive, Ste 120, Dover DE 19901.

   xii. 353-535 Baltimore Pike, Springfield PA 19064.

   xiii. 222 East Oak Ridge Rd., Hagerstown, Maryland, 21740.

   xiv. 701 Park Street, Cumberland, Maryland, 21502.

   xv. 3111 Valley Ave, Unit 12C, Winchester, Virginia, 22601.

3. The Twin City Policy is currently in full effect, providing property, business personal property, business income and extra expense, extended business income, virus, and civil authority coverage for a policy period of April 23, 2019 to April 23, 2020 and April 23, 2020 to April 23, 2021.

4. Plaintiffs UHS have performed all of their obligations under the Twin City Policy, including the payment of the premium.

5. Most property policies sold in the United States, including the Twin City Policy, is an all-risk property damage policy. This type of policy covers all risks of loss except for risks that are expressly and specifically excluded.

6. Pursuant to the "Special Property Coverage Form," Form SS 00 07 07 05 the Twin City Policy covers "direct physical loss of or direct physical damage to Covered Property… caused by or resulting from a Covered Cause of Loss." "Covered Cause of Loss" means "risks of direct physical loss unless the loss is Excluded …or Limited…"

7. The Twin City Policy contains the Business Income, and Extra Expense endorsements, the Virus Endorsement (Form SS 40 93), and the Civil Authority endorsement. Coverage extensions provided within these endorsements include payment for lost business income, normal operating expenses incurred (including payroll expenses), extended business income during a period of restoration, and extra expenses for expenses that would not have been incurred but for the loss or damage.

8. The Twin City Policy's Business Income and Civil Authority endorsements contain no exclusion for losses caused by governmental orders issued in order to prevent exposure to a virus, and no other exclusion in the policies apply to this coverage.

2428505.1
2464260.1

9.    Moreover, the Twin City Policy expressly provides "Fungus, Bacteria or Virus coverage" in the amount of $50,000 per location.

10.    Despite this express coverage language, defendant Twin City has denied coverage in willful disregard of its obligations under its policy as well as under Pennsylvania law.

### B.    The Covered Cause of Loss

11.    Efforts to prevent exposure to COVID-19 have caused civil authorities throughout the country to issue orders requiring the suspension of non-essential businesses and preventing citizens from leaving home for non-essential purposes (the "Closure Orders").

12.    Plaintiffs' businesses are not considered "essential," and have therefore been subject to a variety of Closure Orders by state and local authorities, preventing Plaintiffs from operating their businesses, limiting their operations, and/or from use of the covered premises for their intended purpose.

13.    These Closure Orders include, but are not limited to, Pennsylvania Governor Wolf's order dated March 19, 2020 requiring all non-life-sustaining businesses in the Commonwealth to cease operations and close all physical locations.[3] The Pennsylvania Supreme Court recently clarified that the Governor's order has resulted in the temporary loss of use of non-essential business premises effected by the order, and that the order was issued to protect the lives and health of millions of Pennsylvania citizens. Similar Closure Orders were declared by the Governors of Maryland, Virginia, North Carolina and Delaware. *See Friends of DeVito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100 at *17 (Pa. Apr. 13, 2020).

14.    There was no presence of the COVID-19 virus at Plaintiffs' Covered Properties. Rather, Plaintiffs experienced a "Covered Cause of Loss" by virtue of the Closure Orders which

---

[3] Available at https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order

2428505.1
2464260.1

denied use of the Covered Properties by causing a necessary suspension of operations during a period of restoration. The presence or absence of the COVID-19 virus would have no effect upon the closure or the loss of business inasmuch as the stay at home orders apply to all non-essential businesses regardless of their exposure to the virus. The Closure Orders operate as a blockade that prevents employees and patrons from entering the businesses for their intended purpose.

15. This Covered Cause of Loss triggered coverage pursuant to the coverage extensions of the Policy's Business Income endorsements.

16. The Twin City Policy's Business Income coverage extension provides coverage "for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss or direct physical damage to property. . . caused by or resulting from a Covered Cause of Loss." The Extended Business Income coverage extension further provides for payment of the actual loss of Business Income the insured incurs during the period that begins on the date that "property is actually repaired, rebuilt or replaced and 'operations' are resumed," and ends on the earlier of the date that either the insured could restore "operations" with reasonable speed, or 30 days. The Extra Expense coverage extension covers reasonable and necessary extra expenses incurred by the insured during the "period of restoration," that the insured would not have incurred if there had been no direct physical loss or direct physical damage to property.

17. Consistent with the provisions of the Twin City Policy's Civil Authority endorsement, the "Covered Cause of Loss" also caused a direct physical loss or damage to property other than at Plaintiffs UHS's Scheduled Premises, triggering coverage under the Twin City Policy's Civil Authority coverage extension. The coverage extension provides payment for

actual loss of Business Income and necessary Extra Expense incurred during the "civil authority period of restoration."

18. None of the Policy's exclusions apply to Plaintiffs' claims for coverage.

## CLAIMS FOR RELIEF

## COUNT I

### BREACH OF CONTRACT
### BUSINESS INCOME COVERAGE
### Plaintiffs UHS v. Defendant Twin City

19. Plaintiffs reallege the above paragraphs as if fully set forth herein.

20. Plaintiffs UHS's Twin City Policy is a contract under which Twin City was paid premiums in exchange for its promise to pay Plaintiffs UHS's losses for claims covered by the Twin City Policy.

21. In the Business Income and Extra Expense endorsement, Twin City provided Business Income, Extended Business Income, and Extra Expense coverage extensions.

22. Twin City agreed to pay for its insured's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

23. A "partial slowdown or complete cessation" of business activities at the Scheduled Premises is a "suspension" under the Policy, for which Twin City agreed to pay for loss of Business Income during the "period of restoration," as well as continuing normal operating expenses incurred, including payroll expenses.

24. "Business Income" means net income (or loss) before tax that Plaintiffs UHS would have earned "if no physical loss or damage had occurred."

25. The Extended Business Income coverage extension provides for payment of the actual loss of Business Income the insured incurs during the period that begins on the date that

"property is actually repaired... and 'operations' are resumed," and ends on the earlier of the date that either the insured could restore "operations" with reasonable speed, or 30 days.

26. The Extra Expense coverage extension provides for payment of reasonable and necessary Extra Expense an insured incurs during the "period of restoration" that the insured would not have incurred if there had been no direct physical loss or direct physical damage to property at the Scheduled Premises.

27. The Closure Orders caused direct physical loss and damage to Plaintiffs UHS's Scheduled Premises, requiring suspension of operations at the Scheduled Premises. Losses caused by the Closure Orders thus triggered the Business Income provision of Plaintiffs UHS's Harford Policy.

28. Plaintiffs UHS have complied with all applicable provisions of the Policy and/or those provisions have been waived by Twin City, or The Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations.

29. By denying coverage for any Business Income losses incurred by Plaintiff UHS, Twin City has breached its coverage obligations under the Policy.

30. As a result of Twin City's breaches of the Policy, Plaintiffs UHS have sustained substantial damages for which Twin City is liable, in an amount to be established at trial.

## COUNT II

### BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE

31. Plaintiffs reallege the above paragraphs as if fully set forth herein.

32. Plaintiffs' Policies are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy.

33. In the Business Income for Civil Authority Actions endorsement, Defendant

agreed to pay for its insureds' actual loss of Business Income and Extra Expense incurred due to the necessary suspension of its operations during the "period of restoration."

34. The Closure Orders caused direct physical loss and damage to property other than Plaintiffs' Scheduled Premises, resulting in a prohibition of access to the Scheduled Premises. Losses caused by the Closure Orders thus triggered the Business Income for Civil Authority Actions provision of Plaintiffs' Policies.

35. Plaintiffs have complied with all applicable provisions of their Policies and/or those provisions have been waived by the Defendant, or the Defendant is estopped from asserting them, and yet the Defendant has abrogated their insurance coverage obligations.

36. By denying coverage for any Civil Authority losses incurred by Plaintiffs, Defendant has breached their coverage obligations under the Policies.

37. As a result of Defendant's breaches of the Policies, Plaintiffs have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT III

## BAD FAITH

38. The foregoing paragraphs are incorporated at length as if set forth fully herein.

39. Defendant Twin City has no actual basis for declining complete coverage of the plaintiffs' claim for damages.

40. The refusal of defendant to compensate plaintiffs for losses sustained and its practices in the handling of the claim constitute bad faith towards the insured.

41. Defendant has declined coverage in an intentional, willful and wanton disregard of the terms of the Policy.

WHEREFORE, plaintiffs UHS demands judgment in their favor and against defendant Twin City in an amount in excess of $50,000.00, attorney's fees, pre- and post-judgment interest, delay damages, punitive damages, treble damages, cost of suit, and such other legal and equitable relief as this court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant as follows:

 a. Entering judgment in favor of Plaintiffs and awarding damages for breach of contract in an amount to be determined at trial;

 b. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

 c. Ordering Defendant to pay attorneys' fees, reasonable expenses and costs of suit; and

 d. Ordering such other and further relief as may be just and proper.

                    SHERMAN, SILVERSTEIN, KOHL,
                    ROSE & PODOLSKY, P.A.

              By:   s/Alan C. Milstein
                    Alan C. Milstein
                    308 Harper Drive, Suite 200
                    Moorestown, NJ 08057
                    Telephone: 856-662-0700
                    E-Mail:
                    amilstein@shermansilverstein.com
                    *Attorneys for Plaintiffs*

Dated: July 13, 2020