# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-23677-Civ-WILLIAMS/TORRES

SOUTH FLORIDA ENT
ASSOCIATES, INC.

      Plaintiff,

v.

HARTFORD FIRE
INSURANCE COMPANY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS**

      This matter is before the Court on Hartford Fire Insurance Company's ("Defendant") motion to dismiss against South Florida Ent Associates, Inc.'s amended complaint. [D.E. 14]. Plaintiff responded to Defendant's motion on October 28, 2020 [D.E. 18] to which Defendant replied on November 13, 2020. [D.E. 24]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's motion to dismiss should be **GRANTED**.[1]

_____

[1]     On October 16, 2020, the Honorable Kathleen Williams referred Defendant's motion to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 15].

## I.  BACKGROUND

Plaintiff is an ear, nose, and throat medical practice that performs outpatient procedures in Miami-Dade, Broward, and Palm Beach Counties.  On March 21, 2020, Florida Governor, Ron DeSantis, forced Plaintiff to close its doors after issuing an emergency order that prohibited all elective medical procedures in Florida to conserve essential resource for hospital workers and first responders in response to the COVID-19 pandemic.  When confronted with mounting business losses, Plaintiff contacted Defendant to seek relief under an insurance policy that protects, among other things, against expenses that result from an involuntary interruption of business operations.[2]

When Plaintiff demanded payment for these losses, Defendant denied Plaintiff's claim because Plaintiff did not experience any physical loss or damage to the insured property.  Plaintiff disagrees because the involuntary closure caused Plaintiff "to lose the functionality of its premises which changed the state of the Plaintiff's property and caused Plaintiff to suffer direct physical loss . . . and direct physical damage to the property."  [D.E. 11 at 9].  To seek relief, Plaintiff filed this action on July 22, 2020 [D.E. 1-2] in Florida state court, to obtain a declaratory judgment that the insurance policy provides coverage for business losses, prejudgment interest, fees, and costs.[3]

---

[2]     The policy period was in effect from October 15, 2019 to October 15, 2020.

[3]     Defendant removed this action on September 3, 2020, invoking the Court's diversity jurisdiction because Plaintiff is a Florida corporation and Defendant is incorporated in Connecticut along with its principal place of business.  [D.E. 1].

## II.   APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference."  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.  *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012).  The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these

3

principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## III.   ANALYSIS

Defendant seeks to dismiss Plaintiff's amended complaint for three independent reasons.[4]  First, Defendant argues that the insurance policy does not provide coverage because it excludes losses for the presence, growth, proliferation, or spread of a virus.  Second, Defendant claims that there is no insurance coverage because every provision in the policy requires an allegation that Plaintiff suffered a direct physical loss or damage to property.  While Defendant is sympathetic that Florida's Governor forced Plaintiff to temporarily close its doors, Defendant maintains that there is no allegation anywhere in the complaint that Plaintiff's property suffered any actual harm.  And third, Defendant reasons that Plaintiff cannot establish coverage under the Civil Authority provision of the policy because

---

[4]      In determining whether Plaintiff's amended complaint fails to state a claim, we may consider the language of the policy itself because exhibits are part of a pleading "for all purposes," and Plaintiff attached it in this case. Fed. R. Civ. P. 10(c); *see also Solis–Ramirez v. U.S. Dep't of Justice,* 758 F.2d 1426, 1430 (11th Cir. 1985) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."). To the extent the complaint's allegations conflict with the exhibit, the exhibit must control.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.") (citing *Crenshaw v. Lister,* 556 F.3d 1283, 1292 (11th Cir. 2009)).

access to the premises was never prohibited nor did the business close as a result of any direct physical loss or damage to the property.  Before we turn to the merits, we must consider the general principles governing the interpretation of insurance contracts under Florida law.  These principles are necessary, as they will inform the analysis that follows.

### A.  *General Principles of Insurance Contracts*

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)).  The interpretation of an insurance contract – including the question of whether an insurance provision is ambiguous – is a question of law.  *See id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

In addition, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).  The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So.

2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties.").

However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4 (citing *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997)). Where an interpretation "involve[s] exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1228 (11th Cir. 2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). An insurance policy must, of course, be ambiguous before it is subject to these rules. *See Taurus Holdings, Inc.*, 913 So. 2d at 532 ("Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous."). An ambiguous policy must, for example, have a genuine inconsistency, uncertainty, or ambiguity in meaning after the court has applied the ordinary rules of construction. *See Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998). "Just because an operative term is not defined, it does not necessarily mean

6

that the term is ambiguous." *Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling Co.*, 2009 WL 700246, at *4 (S.D. Fla. Mar. 17, 2009) (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 166 (Fla. 2003)).

On the other hand, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Hagen v. Aetna Cas. & Sur. Co.,* 675 So. 2d 963, 965 (Fla. 5th DCA 1996). Ultimately "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence." *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001) (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)).

When the parties dispute coverage and exclusions under a policy, a burden-shifting framework applies. "A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy." *U.S. Liab. Ins. Co. v. Bove,* 347 So. 2d 678, 680 (Fla. 3d DCA 1977) (alteration added; citations omitted). If the insurer is able to establish that an exclusion applies, the then burden shifts back to the insured to prove an exception to the exclusion. *See id.*; *see also IDC Const., LLC. v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004) ("When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations in the complaint are cast solely and

7

entirely within the policy exclusions and are subject to no other reasonable interpretation."). That is, "if there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion." *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005) (citing *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997)).

### B. _Direct Physical Loss or Direct Physical Damage_

Having set forth the relevant legal principles, Defendant argues that Plaintiff's amended complaint fails to state a claim because the insurance policy only provides coverage for the actual loss of business income if the covered property suffers a *direct physical loss or direct physical damage*. Defendant claims that every policy provision includes this requirement and that there is no allegation that Plaintiff's property suffered any actual harm. *See, e.g.*, [D.E. 11-1 at 106 ("We will pay for direct physical loss of or direct physical damage to the following types of Covered Property caused by or resulting from a Covered Cause of Loss."). Defendant points out, for example, that the Business Income section includes this explicit requirement:

> We will pay up to the Special Business Income Limit of Insurance stated in the Property Choice ‐ Schedule of Premises and Coverages for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary interruption of your business operations during the Period of Restoration due to *direct physical loss of or direct physical damage* caused by or resulting from a Covered Cause of Loss to property at "Scheduled Premises" where a limit of insurance is shown for Special Business Income.

*Id.* at 112 (emphasis added).

8

Defendant also argues that, to the extent Plaintiff seeks coverage under the Extended Business Income provision, that too requires an allegation of direct physical loss or damage:

> Loss of Business Income must be caused by *direct physical loss or direct physical damage* at the insureds premises caused by or resulting from any Covered Cause of Loss.

*Id.* at 101 (emphasis added).   Either way, Defendant takes the position that Plaintiff cannot sidestep this requirement and that the complaint must be dismissed for seeking pure economic losses with no connection to any physical losses or damages.

Plaintiff's response includes several arguments in opposition.   First, Plaintiff focuses on the definition of a "covered loss" under the policy:

> Covered Causes of Loss means direct physical loss or direct physical damage that occurs during the Policy Period and in the Coverage Territory unless the loss or damage is excluded in the GENERAL EXCLUSIONS or the SPECIFIC EXCLUSIONS or as provided in the Additional Coverage – Equipment Breakdown or by endorsement.

[D.E. 11-1 at 119].   Plaintiff reasons that all losses covered under the policy are defined as either a direct physical loss or direct physical damage.   Plaintiff then states that the exclusions must be carved out of this category because they are merely a subset of a whole – meaning they too are defined as a direct physical loss or a direct physical damage, even though there is no coverage for them.   *See Ajax Bldg. Corp. v. Hartford Fire Ins. Co.*, 358 F.3d 795, 799 (11th Cir. 2004) ("This is the very nature of an insurance contract; exclusions in coverage are expressly intended to modify coverage clause and to limit their scope.").

Plaintiff follows this logic with a focus on the exclusions to the policy and states that several of them imply that a direct physical loss or damage cannot be as restrictive as Defendant suggests.  Plaintiff mentions, for instance, that there is nothing "physical" about losses related to several exclusions, including losses related to government seizures, nuclear explosions, and war-related damages:

> We will not pay for loss or damage caused by or resulting from, or arising out of the seizure or destruction of property by order of governmental authority.
>
> . . .
>
> We will not pay for loss or damage caused by, resulting from, or arising out of, or in any way related to nuclear reaction, nuclear radiation or radioactive contamination, however caused.
>
> . . .
>
> We will not pay for loss or damage caused by, resulting from, arising out of, or in any way related to: (1) War, including undeclared or civil war;  (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or  (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

[D.E. 11-1 at 121, 123].

Plaintiff uses the same reasoning in reference to losses or damages caused by fungi, wet rot, dry rot, bacteria, or a virus because the policy provides coverage for all of these items even though some of them do not involve a structural change or degradation to property:

> We will pay for loss or damage by "fungus", wet rot, dry rot, bacteria and virus.  As used in this Limited Coverage, the term loss or damage means:

> (1) Direct physical loss or direct physical damage to Covered Property caused by "fungus", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungus", wet rot, dry rot, bacteria or virus;

*Id.* at 80.  Instead, Plaintiff claims that only wet rot and dry rot involve a structural change to property and that the others fail to have any tangible physical alteration. Plaintiff therefore concludes that the meaning of direct physical loss or direct physical damage cannot only mean actual harm.

Second, Plaintiff contends that the use of an "or" between direct physical loss and direct physical damage means that the two terms cannot mean the same thing and that the terms must be different when interpreting the policy.  *See Landrum v. Allstate Ins. Co.*, 811 F. App'x 606, 609 (11th Cir. 2020) ("Use of the disjunctive 'or' in the policy 'indicates alternatives and requires that those alternatives be treated separately,'") (citations omitted).  While the meaning of these terms is undefined in the policy itself, Plaintiff suggests that "damage" can mean ether physical harm (consistent with Defendant's position) or some other generic injury according to several dictionary definitions.  And given that possibility, Plaintiff implies that it would be premature to dismiss the complaint if the meaning of these terms is unclear.

Third, Plaintiff references several more definitions in an attempt to determine the meaning of "direct," and "physical".  Plaintiff looks to the definitions of the word "loss" and comes to the conclusion that "direct physical loss" must mean an actual loss of possession or the loss of something material.   Plaintiff says that this fits squarely with the allegations in this case because Plaintiff lost the ability to

11

open its business and requests that the Court construe the language in the policy to accompany this definition.

Plaintiff then provides a review of several court cases and how they have interpreted the meaning of a direct physical loss over the last several decades. Plaintiff traces these cases back to a Colorado action and explores other jurisdictions – including California, Oregon, Minnesota, New Jersey and other states – where courts have apparently found that a direct physical loss can exist when a business only becomes unusable.  In fact, Plaintiff states that the weight of authority leans in its favor and that it shows that there is no requirement for an allegation of tangible physical alteration to avail itself of coverage.  And since there has been fifty-two years of case law that has taken this position, Plaintiff concludes that Defendant's motion to dismiss must be denied.

We begin with the language of the insurance policy.  The policy does not define "direct physical loss" or "direct physical damage."  However, "[t]he mere failure to provide a definition of a term involving coverage does not render the term ambiguous."  *Those Certain Underwriters at Lloyd's London v. Karma Korner, LLC*, 2011 WL 1150466, at \*2 (M.D. Fla. 2011) (citation omitted).  When a policy does not define a term, the plain and generally accepted meaning should be applied.  *See Evanston Ins. Co. v. S & Q Prop. Inv.*, LLC, 2012 WL 4855537, at \*2 (S.D. Fla. 2012).

Defendant argues that, under the plain meaning of the word "physical", Plaintiff has not alleged coverage for any loss because, by definition, the policy

12

excludes losses that are intangible. *See, e.g.*, 10A *Couch On Insurance* § 148.46 (3d Ed. 1998) ("[T]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."). This point is well taken because courts in our district have found – both before and in response to the COVID 19-pandemic – that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)), *aff'd*, 2020 WL 4782369 (11th Cir. Aug. 18, 2020); *see also Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 2020 WL 5791583, at *3 (M.D. Fla. Sept. 28, 2020) ("Plaintiff argues that economic damage is synonymous with 'physical loss' and is therefore covered under the Policies. Plaintiff's argument is unpersuasive because Florida law and the plain language of the Policies reflect that *actual, concrete damage is necessary*.") (emphasis added).

Plaintiff pushes back against this argument with reference to a district court's decision in *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385, at *4

13

(W.D. Mo. Aug. 12, 2020).  There, the plaintiffs purchased insurance policies for their hair salons and restaurants.  The policies provided coverage for physical losses or physical damages, and the plaintiffs argued that they should recover the insurance proceeds as a result of the Covid-19 pandemic.  The defendants moved to dismiss because – with the policies requiring either a direct physical loss or damage – the plaintiffs could not recover unless there was an actual, tangible, permanent, or physical alteration to the insured properties.  The district court rejected that argument because "loss" and "damage" could not be conflated with the "or" separated between them.  Instead, the court had to "give meaning to both terms," to avoid the other from being superfluous.  *Studio 417, Inc.*, 2020 WL 4692385, at *5 (citing *Nautilus Grp., Inc. v. Allianz Global Risks US*, 2012 WL 760940, at * 7 (W.D. Wash. Mar. 8, 2012) (stating that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous")).

The district court then referenced several decisions where courts have recognized that, absent a physical alteration, a physical loss may occur when a property is uninhabitable or substantially unusable for its intended purpose. *Studio 417, Inc.*, 2020 WL 4692385, at *5 (citing *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming the denial of coverage but recognizing that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner"); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, 2002 WL 31495830, at * 9 (D. Or. June 18,

2002) (citing case law for the proposition that "the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("We have previously held that direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way.")); *see also Murray v. State Farm Fire & Cas. Co.,* 203 W.Va. 477, 509 (1998) (holding policyholders to suffer a "direct physical loss" when their homes were rendered uninhabitable due to threat of rockfall); *W. Fire Ins. Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P.2d 52, 55 (1968) (holding that the policyholder suffered "direct physical loss" when "the accumulation of gasoline around and under the [building caused] the premises to become so infiltrated and saturated as to be uninhabitable, making further use of the building highly dangerous").

The court also acknowledged that there were cases where an actual alteration was required to show a "physical loss," but distinguished those on the basis that they were, for the most part, decided on a motion for summary judgment, factually dissimilar, or non-binding. *Id.* (citing *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) (affirming the denial of insurance coverage on a motion for summary judgment and under Minnesota law)); *see also Mama Jo's, Inc.*, 2018 WL 3412974, at *8 (granting summary judgment in favor of the insurance company because the plaintiff could not "show that there was any suspension of operations caused by 'physical damage.'") (citing *Ramada Inn*

*Ramogreen, Inc. v. Travelers Indem. Co. of Am.*, 835 F.2d 812, 814 (11th Cir. 1988) ("[R]ecovery is intended when the loss is due to inability to use the premises where the damage occurs.")).

In light of these decisions, the district court denied the defendant's motion to dismiss because the plaintiffs alleged that COVID-19 was a highly contagious virus that was physically present in viral fluid particles and deposited on surfaces and objects.  The plaintiffs further alleged that the physical substance was on the premises and caused them to cease or suspend operations.  That is, "[r]egardless of the allegations in . . .  other cases, Plaintiffs . . . plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable."  *Studio 417, Inc.*, 2020 WL 4692385, at *6.  And that was "enough to survive a motion to dismiss."  *Id*.

When compared to the facts of this case, Plaintiff's allegations are much weaker because it has not even alleged that there was anything on the premises that could cause any physical harm.  Instead, Plaintiff claims that Florida's Government forced the temporary closure of its medical practice.  And, as stated earlier, courts have found this to be insufficient to state a claim because there must be some allegation of actual harm:

> The critical policy language here—"direct physical loss or damage"—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage.  [Plaintiff] simply cannot show any such loss or damage to the 40 Wall Street Building as a result of either (1) its inability to access its office from October 29 to November 3, 2012, or (2) Con Ed's decision to shut off the power to the Bowling Green network.  The words "direct" and "physical," which modify the phrase "loss or

damage," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

Of course, the more important question is how to interpret the insurance policy under Florida law because that is the only state that matters in determining whether Plaintiff has coverage.[5]   And when we examine the language of the insurance policy, "direct physical" modifies both "loss" and "damage."  That means that any "interruption in business must be caused by some *physical problem* with the covered property . . . which must be caused by a 'covered cause of loss.'" *Philadelphia Parking Authority v. Federal Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005); *see also United Airlines, Inc. v. Ins. Co. of State of Pa.,* 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ("The inclusion of the

---

[5]      Although Florida law is what matters, there are several recent COVID-19 cases that support the undersigned's interpretation of the insurance policy in this case. Take, for instance, a district court's decision in *Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020), where the plaintiff chiropractor sought coverage for the loss of income due to government orders that restricted the plaintiff's ordinary use of its property.  The court dismissed the action with prejudice, holding that the plaintiff had failed to demonstrate tangible damage to covered property, as "plainly" required by the policy term "direct physical loss." *Id.* at *8.  The same is true in looking at a district court's decision in *10E, LLC v. Travelers Indemnity Co. of Connecticut*, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020), where the plaintiff sought coverage for income lost as a result of government shutdown orders that prevented the ordinary and intended use of a property.  The court dismissed the action, holding that the plaintiffs "cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage," and noting that impaired use or value cannot substitute for physical loss or damage. *Id.* at *5.

modifier 'physical' before 'damages' . . . supports [defendant's] position that physical damage is required before business interruption coverage is paid.").

Florida's appellate courts are in agreement with this interpretation.[6]   The Third District has found, for instance, that a "loss" constitutes a diminution of value and that, with the modifiers "direct" and "physical," the alleged damage *must be actual*:

> A "loss" is the diminution of value of something, and in this case, the 'something' is the insureds' house or personal property.  Loss, *Black's Law Dictionary* (10th ed. 2014).  "Direct" and "physical" modify loss and impose the requirement that the damage be actual.  Examining the plain language of the insurance policy in this case, it is clear that the failure of the drain pipe to perform its function constituted a "direct" and "physical" loss to the property within the meaning of the policy.

*Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. 3rd DCA 2017); *see also Vazquez v. Citizens Prop. Ins. Corp.*, 2020 WL 1950831, at *3 (Fla. 3rd DCA Mar. 18, 2020) ("Consistent with this plain meaning, the trial court determined that the 'insured loss' is the property that was actually damaged."); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999) (holding that a policyholder could not recover under a policy requiring "physical loss" unless the claimed mold physically and demonstrably

---

[6]     Although there are not many published decisions on this issue since the COVID-19 pandemic, Florida trial courts have reached the same conclusion in just the last few days.  *See, e.g.*, *DAB Dental PLLC v. Main Street America Protection Ins. Co.*, No. 20-CA-5504, at 6 (Cir. Ct. Fla. Nov. 10, 2020) (granting a motion to dismiss because "[t]here is no allegation that COVID-19 physically altered or physically damaged any property.  Nor is Plaintiff's lack of access to its own premises a direct physical loss or damage, as those terms are defined by Florida law."); *Mace Marine, Inc. v. Tokio Marine Specialty Ins. Co.*, No. 20-CA-120-P (Cir. Ct. Monroe, Oct. 8, 2020).

damaged the insured property); *MRI Healthcare Ctr. of Glendale, Inc.*, 187 Cal. App. 4th at 779 ("A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.") (internal quotation marks and citation omitted); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 42 (Ohio Ct. App. 2008).

The Eleventh Circuit's decision in *Mama Jo's Inc. v. Sparta Ins. Co.*, 2020 WL 4782369, at *1 (11th Cir. Aug. 18, 2020), is also consistent with our interpretation of Florida law.  There, the plaintiff owned and operated a restaurant and, from December 2013 until June 2015, there was roadway construction in its general vicinity.  The construction generated dust and debris, requiring the plaintiff to perform daily cleanings.  Although the restaurant was open every day during the roadwork, customer traffic decreased and the business suffered an economic loss. The plaintiff was insured under a policy, which included coverage for loss of business.  This policy covered "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss."  *Id.* at *1 (citation and quotation marks omitted).  The plaintiff submitted a claim to the insurer on the basis that dust and debris caused a loss in business.  The insurer denied that claim because the proof of loss form failed to reflect the existence of any physical damage (and it was questionable whether a direct physical loss occurred).  Thus, the insurer concluded that plaintiff's claim was not covered under the policy.

After finding no error in the district court's decision to exclude several of the plaintiff's experts, the Eleventh Circuit found that the plaintiff failed to show any evidence of direct physical loss or damage. The plaintiff alleged that his insurance claim had two components: one for cleaning the restaurant and another for the loss of business income. And in determining whether coverage existed, the Court looked to the same Florida decisions we referenced above and found that "direct physical loss" is defined as a diminution in value and that the modifiers "direct" and "physical" "imposed the requirement that the damage be actual." *Id*. (citing *Homeowners Choice Prop. & Cas.*, 211 So. 3d at 1069; *Vazquez*, 2020 WL 1950831, at *3).

The Court then examined whether coverage existed for the cleaning claim because the plaintiff's public adjuster testified that cleaning and painting was all that was required. In fact, there was no need for the removal or replacement of any items during the construction. The Eleventh Circuit found that, based on the evidence that the district court considered, the cleaning claim did not constitute a direct physical loss because these expenses were merely economic losses. *Id*. at *8 ("We conclude that the district court correctly granted summary judgment on Berries' cleaning claim because, under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'") (citing *Maspons*, 211 So. 3d at 1069 (recognizing that "damage [must] be actual"); *Vazquez*, 2020 WL 1950831, at *3 (same)); *see also Universal Image Prods., Inc. v. Fed. Ins*. Co., 475 F. App'x 569, 573 (6th Cir. 2012) ("[C]leaning . . . expenses .

. . are not tangible, physical losses, but economic losses."); *MRI Healthcare Ctr. of Glendale, Inc.*, 187 Cal. App. 4th at 779 ("A direct physical loss 'contemplates an actual change in insured property."); *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 307 (2003) (same).

The Eleventh Circuit also agreed with the district court, with respect to the business loss claim, because that too required that a suspension of operations be caused by direct physical loss or damage to the property. Yet, the plaintiff failed to put forward any evidence that it suffered a direct physical loss or damage during the policy period. And in the absence of any evidence of actual damage, the Eleventh Circuit concluded that the district court was correct in granting the insurer's motion for summary judgment.

Although *Mama Jo's* was not about any closures related to the COVID-19 pandemic nor did it concern the same procedural posture, the plaintiff in that case at least alleged that there was a physical intrusion into the restaurant in the form of dust and debris. Plaintiff has done nothing similar in this case. Plaintiff merely claims that Florida's Government temporary closed Plaintiff's non-essential elective outpatient medical and surgical practice from March 21, 2020, until May 3, 2020. But, this cannot state a claim because – as the cases demonstrate above – the loss must arise to actual damage. *See Mama Jo's Inc.*, 823 F. App'x at 879 ("'Direct' and 'physical' modify loss and impose the requirement that the damage be actual.") (citing Florida cases). And it is not plausible how the allegations in this case meet

that threshold when Plaintiff's medical practice merely suffered economic losses as opposed to anything tangible, actual, or physical.

Plaintiff tries to sidestep these cases with many clever arguments, but none are effective. Plaintiff argues, for instance, that there is nothing "physical" about losses related to several exclusions, including losses related to government seizures, nuclear explosions, and war-related damages. These contentions are not even remotely convincing, in part, because Plaintiff fails to reference any authority and then makes these assertions without any explanation of how these circumstances could occur without actual harm. [D.E. 18 at 16 ("The losses contemplated by these exclusions are not "physical" losses in the sense argued by Defendant. They encompass losses that do not arise from structural or tangible damage to covered property, but instead deprive the insured of the property's intended use.")].

But, putting aside the conclusory nature of these arguments, they are also illogical because if, for example, a property suffered damage at the hands of a nuclear explosion, that would of course have a direct physical impact on a structure. There is even a question on whether a building would be left standing and, if so, there would still be radiation that could damage the property and trigger coverage under the policy.[7] The same is true if the government seized property or if a structure was damaged during a war. Indeed, Plaintiff's hypotheticals do more harm than good to its position because it highlights the differences between actual harm and economic losses. On one hand, we have hypotheticals where a building is

---

[7]   There is also the question of whether the owner of a property that was damaged during a nuclear explosion would survive and be alive to file a claim under the policy.

not even left standing and, on the other, there is an executive order that directs a business to temporarily close its doors.  They are not remotely the same.

The same is true with respect to Plaintiff's argument that only wet rot and dry rot can cause physical harm to a structure as opposed to bacteria, fungi, or a virus.  First, it is unclear how Plaintiff came to this dubious conclusion.  It appears that Plaintiff is basing this opinion on common sense, but it seems highly questionable that neither bacteria, fungi, nor a virus could impose any actual harm. Second, even if we adopted this rationale, it undercuts Plaintiff's argument because there is no allegation that COVID-19 was present on the premises.  And if COVID-19 was never found on the premises, it is unclear how there could be any tangible harm to Plaintiff's property.  Plaintiff would instead have to allege that there was wet rot and dry rot on the premises for it to recover under the insurance policy, but Plaintiff has done neither.  So, there would be no coverage for Plaintiff under its own interpretation of the insurance policy.   The way in which Plaintiff has interpreted the policy is, of course, mistaken but we explore it just to show how Plaintiff has hurt its own position with arguments and hypotheticals that are, at best, nonsensical.

Plaintiff's remaining arguments are equally unavailing because they rely, for the most part, on dictionary definitions to discern the meaning of "direct," and "physical".   While these definitions are enlightening, to some extent, they do nothing to grapple with the way in which Florida courts have interpreted these terms.  Plaintiff then discusses a long line of cases across the country as persuasive

authority on how to determine a "direct physical loss" or "direct physical damage." But, these cases are inapposite because they are not interpreting Florida law. And, as stated earlier, Florida law is all that matters in the interpretation of a Florida contract.

Plaintiff then suggests that "direct physical loss" and "direct physical damage" could apply if a property is either uninhabitable or substantially unusable. *See, e.g.*, *Port Auth. of New York & New Jersey*, 311 F.3d at 236 ("When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner."). Plaintiff relies, for the most part, on both the district court's decision and the Eleventh Circuit's opinion in *Mama Jo's*. But, Plaintiff misrepresents both of these cases in trying to find insurance coverage where none exists.

Plaintiff argues, for example, that the district court granted the insurer's motion for summary judgment because there was no evidence that the restaurant was uninhabitable or unusable. While this is true in some respects, that was not the holding of that case. The holding was that the plaintiff's claim for cleaning a restaurant could not be considered a direct physical loss because that requires "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Mama Jo's, Inc.*, 2018 WL 3412974, at *9 (quoting *MRI Healthcare Ctr. of Glendale, Inc.*, 187 Cal. App. 4th at 779). It was only after the Court made that finding that it

24

considered, in the alternative, whether the plaintiff's property was uninhabitable or substantially unusable.  And noticeably, the court was reluctant to apply that definition, but did so anyway, because the result was no different:

> Even if this Court were to adopt a more expansive definition of 'direct physical loss or damage,; Plaintiff would not be entitled to coverage.
> . . .
> Here, the restaurant was not "uninhabitable" or "unusable."  In fact, the restaurant remained open every day, customers were always able to access the restaurant, and there is no evidence that dust had an impact on the operation other than requiring daily cleaning.

*Mama Jo's, Inc.*, 2018 WL 3412974, at *9.

After the district court found that there was no evidence that the restaurant was either uninhabitable or unusable, it again suggested that this was the wrong definition to apply because a direct physical loss excludes those losses that are intangible or incorporeal.  *Id*. ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (quoting 10A *Couch On Insurance* § 148.46 (3d Ed. 1998)).  It is therefore unclear how Plaintiff can contend that the district court's decision in *Mama Jo's* supports an expanded definition of "direct physical loss" and "direct physical damage" when the court twice rejected that argument.

Plaintiff uses the same trickery with respect to the Eleventh Circuit's decision in *Mama Jo's*.  Plaintiff claims that the Eleventh Circuit agreed with the

district court that "direct physical loss" requires evidence that a property is either uninhabitable or unusable.  But, Plaintiff lifted that portion of the opinion from the opening sentences of the analysis section where the Court merely summarized the appellant's position.  *See Mama Jo's Inc.*, 823 F. App'x at 875 ("Berries argues that the district court erred in three ways: first, by concluding that 'direct physical loss' does not include cleaning, but rather requires a showing that the property be rendered uninhabitable or unusable").  Plaintiff is therefore misrepresenting the Eleventh Circuit's decision and the Court never mentioned the words "uninhabitable" or "unusable" anywhere else in the decision.

Plaintiff then doubles down on this tactic when it states that the Eleventh Circuit explained that physical losses or damages could arise when an accident causes insured property to become unsatisfactory for future use.  This could not be further from the truth because the sentence that Plaintiff references appears in the factual and procedural background of the Eleventh Circuit's decision, and only summarizes the district court's conclusions.  *Id.* at 875 ("The district court also concluded that direct physical loss refers to tangible damage to property, which causes it to become unsatisfactory for future use or requires repairs.").  Even worse, Plaintiff asserts that the Eleventh Circuit embraced the rationale that a physical loss can occur when property becomes either uninhabitable or unusable, yet the pincite that Plaintiff references talks about the factual background of the case and the Court's standard of review – neither of which aids Plaintiff's argument.  Thus, Plaintiff's reliance on *Mama Jo's* is woefully inaccurate because the Eleventh

Circuit found that a direct physical loss imposes the requirement that damages be actual and it relied on the same Florida state law cases that we referenced above.

Having badly misrepresented *Mama Jo's*, Plaintiff turns its attention to other state and federal court cases to salvage its argument.  There is no need to consider any of these cases because we have already touched upon the Eleventh Circuit's view on this question and Florida's appellate courts.   And they are both in agreement that the harm suffered must be actual.  *Id*. at 879 ("Florida's District Court of Appeals for the Third District has addressed the definition of 'direct physical loss': 'A 'loss' is the diminution of value of something . . . 'Direct' and 'physical' modify loss and impose the requirement that the damage be actual.") (citations omitted); *see also Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) ("Plaintiff merely claims that two Florida Emergency Orders closed his indoor dining. But, for the reasons already stated, this cannot state a claim because the loss must arise to actual damage. And it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses – not anything tangible, actual, or physical.").  Therefore, even if the cases that Plaintiff references are somehow persuasive (and assuming that Plaintiff has not misrepresented them like the others), there is no need to go any further in our recommendation that Defendant's motion to dismiss should be **GRANTED** for the failure to allege any actual harm to the insured property.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED**.  If viable under Rule 11, any amended complaint should be filed within (14) fourteen days from the date the District Judge adopts this Report and Recommendation.[8]

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 13th day of November, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[8]   Because Plaintiff's complaint fails for the reasons stated above, we offer no opinion on Defendant's remaining arguments.  To the extent Plaintiff files an amended complaint, it should ensure that it can survive any other exclusion that may exist under the insurance policy.